# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEAK OIL HOLDINGS LLC, et al.<br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF VENTURA,<br>    Defendant. | CV 21-0734 DSF (AFMx)<br><br>Order GRANTING County of Ventura's Motion for Judgment on the Pleadings (Dkt. 44) |
| COUNTY OF VENTURA,<br>    Counter-Claimant,<br><br>v.<br><br>PEAK OIL HOLDINGS LLC, et al.,<br>    Counter-Defendants. | |

    Defendant and Counter-Claimant County of Ventura (the County) moves for judgment on the pleadings as to Plaintiffs, Counter-Defendants, and Cross-Defendants Peak Oil Holdings LLC and Peak Operator LLC's (collectively, Peak) complaint, as well as Counter-Claimant, Cross-Claimant, and Counter-Defendant HBH Farm LLC's (HBH) counter-claim against the County. Dkt. 44 (Mot.). Peak and HBH oppose. Dkts. 45 (Peak Opp'n), 46 (HBH Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the County's motion for judgment on the pleadings is GRANTED.

## I. BACKGROUND

In June 2012, Peak acquired a long-term minerals lease from HBH, which granted Peak the right to develop the oil, gas, and minerals under the leased property located at 4201 Sturgis Road, Oxnard, CA 93030, in the Oxnard Oil Field in an unincorporated area of Ventura County (the Property). Dkt. 1 (Compl.) ¶ 25. Peak purchased the lease with the reasonable investment-backed expectation that Peak could and would develop oil and gas operations on the Property. Id. ¶¶ 26, 66. Peak alleges that when it acquired the rights to develop the oil and gas underneath the Property, its rights were governed by a "fully vested Conditional Use Permit" (the CUP). Id. ¶ 3. HBH alleges that on June 1, 2015, Peak and HBH entered into an Amended and Restated Oil and Gas Lease (the 2015 Lease). Dkt. 32 (HBH Counter-Claim) ¶ 6. Under the terms of the 2015 Lease, HBH was named as the lessor and Peak was named as the lessee. Id. HBH was and is the surface owner of the Property and Peak was granted "all of its oil, gas, and mineral rights"; in exchange, HBH was to receive royalties. Id. Peak's rights under the 2015 Lease were governed by a fully vested CUP. Id. ¶ 7.

Peak alleges that after acquiring the development rights, it submitted a non-discretionary zoning clearance seeking to drill and operate twenty-four wells on the Property and to construct the required facilities to facilitate the drilling and operation. Compl. ¶ 4. The County issued Peak Zone Clearance ZC12-1052 (the 2012 Zoning Clearance), which Peak alleges granted it clearance to implement some of its vested rights granted under the CUP. Id. ¶ 4. After the County issued the 2012 Zoning Clearance, Peak began its development by drilling nine of the twenty-four wells and "installing temporary and permanent facilities." Id. ¶ 28. Peak began operating the first nine wells in October 2013. Id. Between 2013 and 2014, Peak installed temporary facilities and planned to install permanent facilities before an economic downturn in the oil market beginning in late 2014. Id. ¶ 29. From late 2014 to late 2017, Peak did not install its permanent facilities or drill additional wells. Id. ¶ 30. In late 2014, the County informed Peak that the remaining scope of the 2012 Zoning Clearance –

construction of permanent facilities and installation of the remaining fifteen wells – had expired. Id. ¶ 31. Peak continued to operate its temporary facilities: Peak alleges the County did not object. Id. ¶ 32.

Peak alleges that in 2015, it "renewed" the 2012 Zone Clearance under terms that purportedly "remain[ed] the same" as the 2012 Zone Clearance terms. Id. ¶¶ 27 n.1, 32. In September 2017, Peak submitted an "updated Zoning Clearance application" (2017 Zoning Clearance) that included a scope of work for a total of 79 wells, the removal of the temporary facilities, and the construction of permanent facilities. Id. ¶37. In short, the 2017 Zoning Clearance application included unfinished work from the 2012 Zoning Clearance and new work. Id. After the County received the 2017 Zoning Clearance application, the County allegedly informed Peak that Peak's 2012 Zoning Clearance did not expire. Id. ¶ 39. In addition, the County requested that Peak resubmit the 2017 Zoning Clearance to "clearly differentiate" the uncompleted scope of work from the 2012 Zoning Clearance and the new work. Id. On February 1, 2018, Peak resubmitted the 2017 Zoning Clearance per the County's instructions. Id. Peak alleges that based on the County's statements that the 2012 Zoning Clearance did not expire, from March to June 2018, Peak drilled six of the remaining fifteen wells. Id. ¶ 40.

While the 2017 Zoning Clearance application was pending, the County conducted site visits to the Property in April 2018 and again on November 2018. Id. ¶¶ 41-42. In addition, Peak held "face-to-face meetings with the County" in May, June, and September 2018. Id.

On January 18, 2019, the County issued a Notice of Violation to Peak. Id. ¶ 43. On January 28, 2019, Peak timely appealed the Notice of Violation. Peak alleges that after it received the Notice of Violation, it "attempted to work with the County" by (1) attempting to obtain the 2017 Zoning Clearance, which Peak alleges would have solved "most of the issues identified in the Notice of Violation" and (2) at the request of the County, Peak prepared a "compliance agreement" that sought to address the violations identified in the Notice of Violation. Id. ¶ 44. On April 29, 2019, the County issued a Notice of Nullification to Peak,

which purportedly nullified the 2012 Zoning Clearance and the 2015 renewal. Id. ¶ 46. The County issued the Notice of Nullification because the County determined that Peak's 2012 Zoning Clearance application was not in "full, true and correct form." Id. ¶ 46.

On April 23, 2010, the County "imposed a moratorium on additional drill wells . . . and extended it twice through year-end 2020." Id. ¶ 47. Peak alleges that because of the Notice of Nullification and subsequent moratorium, Peak had to cease all oilfield operations. Id. ¶ 49.

On May 2, 2019, Peak timely appealed the Notice of Nullification. Id. ¶ 59. On July 15, 2019, Peak submitted an "as-built zoning clearance" application to the County, in an "attempt to preserve its existing operations during its appeals." Id. ¶¶ 54, 59.

In November 2019, the Planning Commission heard and denied Peak's January and May appeals. Id. ¶ 60. Peak appealed the denials to the County Board of Supervisors (the Board), which denied the appeals in March 2020. Id. Peak alleges that after its appeals were denied, the County claimed "that Peak never had the authority to develop" shallow oil reserves under the CUP and "thus its entire operation was in violation, despite having issued many approvals to Peak along the way." Id. ¶ 55. Thereafter, the County determined "that all equipment was unauthorized" and was required to be removed from the Property. Id. In October 2020, the County imposed a $250 daily civil penalty until all of the equipment was removed from the Property. Id.

Peak estimates that it has incurred "over $100 million" in damages as a result of the County's actions. Id. ¶ 56; see also id. ¶ 5, 19, 26, 36, 48. Peak further alleges that as a result of the County's actions, the County has deprived Peak of all or substantially all of the economically beneficial use of the Property. Id. ¶¶ 12, 19, 48, 65. In addition, HBH alleges that as a result of the County's actions, the County "has deprived HBH of all economically beneficial use of its

4

property and of its economic interest in the 2015 HBH Lease." HBH Counter-Claim ¶ 17.

The Complaint alleges claims for unconstitutional takings of property without just compensation under the Fifth and Fourteenth Amendments and violations of substantive and procedural due process under the Fourteenth Amendment. HBH counter-claims against the County for unconstitutional takings of property without just compensation under the Fifth Amendment.

## II. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Stanley v. Trs. of Cal. State Univ., 433 F.3d 1129, 1133 (9th Cir. 2006). It must appear beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997).

Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion. Dworkin v. Hustler Mag. Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Dismissal is appropriate only if the plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). When deciding a Rule 12(c) motion, courts may consider facts set forth in the pleadings as well as facts contained in materials of which the court may take judicial notice. Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999); see also Hebert Abstract Co., Inc. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (a Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the

merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts").

The plaintiff bears the burden of pleading sufficient facts to state a claim. Courts will not supply essential elements of a claim that are not initially pled. See Richards v. Harper, 864 F.2d 85, 88 (9th Cir. 1988). Allegations by the non-moving party must be accepted as true, and allegations of the moving party that have been denied must be deemed false for the purpose of the motion. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989). However, the court is not required to accept the veracity of "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged," or "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (internal quotation marks and citations omitted) (reviewing ruling under Rule 12(b)(6)).

## III. DISCUSSION

### A. Judicial Notice

The County's unopposed request to judicially notice certain administrative agency records and County of Ventura ordinances is GRANTED. Dkt. 44-2 (RJN).

### B. Fifth Amendment Takings Claim

The County moves for judgment on Peak's regulatory takings claim on the grounds that Peak has no constitutionally protected property interest. Mot. at 14. The County also moves for judgment on HBH's takings claim because it "is entirely derivative of Peak's claims" and therefore "also necessarily fails." Id. at 15. The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (internal citation omitted). "Because the Constitution protects rather than creates property interests, the existence of a property interest" is the threshold question of any

takings analysis, and it is "determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" Phillips v. Washington Legal Found., 524 U.S. 156, 164 (1998) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).

The parties dispute the proper characterization of Peak's property interest with respect to the takings claim. The County contends that Peak asserts a property interest solely in "permits it obtained from the County." Mot. at 8; see also id. at 14 ("The only property right [Peak] alleges is a permit" that it lost "due to its own violations of the permit." Id. at 14). More specifically, the County argues Peak does not have a property interest because its rights in the Property were "properly revoked due to Peak's own misconduct." Id. at 22. Peak disputes the County's characterization of Peak's property interest as being in the 2012 Zoning Clearance. Peak Opp'n at 12. Peak appears to assert at least two property interests. First, Peak alleges it has a vested right to drill for and extract oil. Id. at 13, 15; see also Compl. ¶ 56 (Peak alleging that its property rights include the "right to develop the oil, gas and minerals under the leased property.") Second, Peak argues that "[a] mineral lease . . . is a recognized property interest." Peak Opp'n at 14.

### 1. Vested Right to Drill for and Extract Oil

California law provides that a property owner has the sole and exclusive right to drill for oil and gas as a property right. See Dabney-Johnston Oil Corp. v. Walden, 4 Cal. 2d 637, 649 (1935). A property owner may transfer the exclusive rights to drill for and extract oil. Id. ("The owner of land has the exclusive right on his land to drill for and produce oil. This right inhering in the owner by virtue of his title to the land is a valuable right which he may transfer."); see also Callahan v. Martin, 3 Cal. 2d 110 (1925) ("Under the usual oil and gas lease, the owner-lessor transfers to his lessee his right to drill for and produce oil and other substances. The rights of the lessee present a clear case of a profit à prendre in gross.").

The California Supreme Court has explained that "[t]he doctrine of vested rights . . . states that a property owner who, in good faith reliance on a government permit, has performed substantial work and incurred substantial liabilities has a vested right to complete construction under the permit and to use the premises as the permit allows." Comtys. for a Better Env't v. S. Coast Air Quality Mgmt. Dist., 48 Cal. 4th 310, 323 (2010). If the permittee does nothing after obtaining the permit or fails to comply with its terms, the proper authorities may revoke it. Trans-Oceanic Oil Corp. v. City of Santa Barbara, 85 Cal. App. 2d 776, 783 (1948).

Here, Peak was permitted to drill and operate twenty-four wells under the 2012 Zoning Clearance. Yet, by virtue of Peak's own failure to conform to the 2012 Zoning Clearance, the County ultimately nullified the 2012 Zoning Clearance. See RJN, Exs. 2-6; see also Peak Opp'n at 9 ("The alleged violations were . . . minor and easily correctible."). Peak "cannot now claim a fundamental vested property right in a permit [Peak] violated" by virtue of its own conduct. 49Hopkins, LLC v. City and County of San Francisco, No. 19-cv-00811-SI, 2020 WL 978608, at *5 (N.D. Cal. Feb. 28, 2020); see also Trans-Oceanic Oil, 85 Cal. App. 2d at 783 (proper authorities may revoke permit based on violations). The Court finds Peak does not have a vested right in the 2012 Zoning Clearance. To the extent Peak argues it had a vested interest in a CUP issued before Peak acquired the oil and gas leasing rights, Peak alleges no factual or legal basis supporting its conclusion that "its rights were governed by a fully vested Conditional Use Permit." Compl. ¶ 3. Indeed, Peak alleges no facts that the County took any action with respect to any purported vested CUP. Peak alleges only that the County nullified the 2012 Zoning Clearance. Id. ¶¶ 46, 49.

    **2.    Mineral Lease**

Peak argues that a mineral lease is a recognized property interest. Peak Opp'n at 14. Assuming without deciding that a mineral lease is a cognizable property interest, Peak's takings claim still fails. Peak fails to allege any facts as to what the County "took" or how with

8

respect to the oil and gas lease. Rather, in the opposition papers, Peak merely "alleges that the County took its property interest without just compensation." Id. at 15. Without more, the Court cannot conclude that the County took or interfered with Peak's oil and gas lease for purposes of the Fifth Amendment.

Peak and HBH's Fifth Amendment claims are DISMISSED with leave to amend.

### C. Fourteenth Amendment Due Process Claim

The Due Process Clause prohibits government officials from arbitrarily depriving a person of constitutionally protected property interests. See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1025-26 (9th Cir. 2007). "Unless a classification trammels fundamental personal rights or implicates a suspect classification, to meet constitutional challenge the law in question needs only some rational relation to a legitimate state interest." Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir. 1990) (citing City of New Orleans v. Dukes, 427 U.S. 297, 303-04 (1976)). To succeed on either a substantive or procedural due process claim, a plaintiff "must first demonstrate that he was deprived of a constitutionally protected property interest." Gerhart v. Lake County, Mont., 637 F.3d 1013, 1019 (9th Cir. 2011) (citing Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008) (substantive due process); Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998) (procedural due process)). In addition, a plaintiff must allege facts showing "a denial of adequate procedural protections." Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1061 (9th Cir. 2006) (citations omitted). This is because "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal citation omitted).

For the reasons stated above, Peak has not identified a cognizable property interest. However, even if Peak had identified a property interest, Peak has failed to allege that it was denied the

9

opportunity to be heard at a meaningful time and in a meaningful manner. Indeed, as Peak and HBH acknowledge, Peak had an opportunity to appeal the Planning Commission's decision to nullify the 2012 Zoning Clearance where Peak presented its own evidence and testimony. To the extent Peak argues the Board's decision was biased or otherwise pretextual, the Court does not find that, as alleged, the County violated Peak's due process rights. "In attempting to make out a claim of unconstitutional bias, a plaintiff must 'overcome a presumption of honesty and integrity' on the part of decision-makers [and] must show that the adjudicator 'has prejudged, or reasonably appears to have prejudged, an issue.'" Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995) (simplified). A plaintiff may establish such a violation by demonstrating either actual bias or the appearance of bias. Id. In Stivers, the court determined that the record in that case contained "substantial evidence" that the treatment the plaintiff received was unusually harsh, because the administrative body disregarded the recommendations of legal counsel, repeatedly challenged the plaintiff's integrity, and treated that plaintiff substantially differently from other prospective licensees. Id. at 745. Those actions, coupled with evidence of a pecuniary interest by one of the board members, was sufficient to overcome the presumption of integrity. Id. at 742.

Here, Peak implies that the Board proceedings were somehow tainted or biased because "in 2019, the County had been subject to increasing political pressure from third party environmental groups to curtail oil and gas operations in the County." Compl. ¶ 8. But Peak does not allege, for example, that the Board made any particularly biased comments or that it prohibited Peak from offering evidence or testimony. Peak has therefore not plead factual allegations that if true would sufficiently rebut the presumption of honesty and integrity of the tribunal such that Peak's Fourteenth Amendment procedural due process rights were infringed.

Finally, Peak also asserts a Fourteenth Amendment claim for a violation of substantive due process, asserting that the County's actions were "arbitrary, capricious, unreasonable and pretextual, and part of a

concerted effort to prevent [Peak] from development of [its] property rights and to prevent the ripening of claims." Compl. ¶ 71. A substantive due process challenge to a discrete land use action faces an "exceedingly high burden," and requires allegations that demonstrate that the government entity "behaved in a constitutionally arbitrary fashion." Shanks, 540 F.3d at 1088. In the context of a permitting decision, only "egregious official conduct can be said to be 'arbitrary in the constitutional sense'": it must amount to an "abuse of power" lacking any "reasonable justification in the service of a legitimate governmental objective." Id. (simplified).

Peak and HBH acknowledge that an appeal hearing was held by the Board, evidence and arguments were presented, and the Board ultimately chose to uphold the Planning Commission's decision to nullify the 2012 Zoning Clearance. Peak Opp'n at 11; see also HBH Opp'n at 18-20; RJN, Ex. 5. Without factual allegations that establish why the cited violations were not what animated the County's decision to nullify the 2012 Zoning Clearance, Peak has not adequately stated a substantive due process violation. Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1237-38 (9th Cir. 1994) (rejecting substantive due process claim when plaintiff "merely assert[ed]" that decision was arbitrary and pretextual without providing any evidence).

Peak's Fourteenth Amendment claim is DISMISSED with leave to amend.

### D. Res Judicata

The County argues the Court "must give preclusive effect to both the final Board decision nullifying Peak's rights under the 2012 Zoning Clearance, as well as to the facts found by the administrative bodies," including the fact that "Peak violated the terms of its clearance and that therefore the County validly revoked its zoning clearance." Mot. at 17.

Federal courts must give the same preclusive effect to state court judgments as they would be given in the state in which they were rendered. 28 U.S.C. § 1738. Administrative proceedings may be given

the preclusive effect accorded to a court when they meet the requirements set forth in United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966) – that is, "when an administrative agency is acting in a *judicial capacity* and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," Miller v. County of Santa Cruz, 39 F.3d 1030, 1033 (9th Cir. 1994) (quoting Plaine v. McCabe, 797 F.2d 713, 718 (9th Cir. 1986)).

California courts apply a two-part analysis to determine whether to give preclusive effect to administrative decisions. First, courts determine whether the administrative proceeding met the requirements of Utah Construction.[1] See People v. Sims, 32 Cal. 3d 468, 479 (1982). The Utah Construction requirements are: "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." Utah Constr., 384 U.S. at 422.

Second, courts give the decision preclusive effect if:

(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.

Id. at 484 (simplified). "[O]nly issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine." Id.

---

[1] Because California has adopted the Utah Construction standard, federal courts need only look to California's preclusion law in determining whether preclusion is appropriate. See Miller, 39 F.3d at 1033.

### 1. Application of Knick v. Township of Scott, Pennsylvania

Peak and HBH spend several pages of their respective oppositions arguing the application of Knick v. Township of Scott, Pennsylvania, 139 S. Ct. 2162 (2019). See Peak Opp'n at 16-25; HBH Opp'n at 13-14, 26-28. In Knick, the Supreme Court overruled in part its prior decision, Williamson County Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). Williamson established two requirements for ripeness of a regulatory takings claim: first, that the government entity charged with implementing the regulation had reached a final decision regarding application of the regulation to the property at issue (finality requirement); and second, that the property owner had sought compensation under state law (state-litigation requirement). See Williamson, 473 U.S. at 186, 194. Knick left Williamson's finality requirement intact but eliminated the state-litigation requirement. See Knick, 129 S. Ct. at 2167-69.

The court in Knick appears to have been primarily concerned about the potential preclusive effect of an adverse inverse condemnation ruling in a subsequent federal proceeding. See Knick, 139 S. Ct. at 2167, 2171. Here, the County is not challenging Peak or HBH's takings claims on the grounds that the claims are not ripe because Peak and HBH failed to bring them in state court first. See dkt. 47 at 15. ("The County is not making any argument that the claims brought before this Court are unripe because Peak and HBH failed to first litigate them in state court."). Therefore, the Court fails to see how Knick is relevant to the case at hand.[2]

---

[2] In any event, Knick's application applies to Fifth Amendment takings claims. The Court did not extend its holding to a Fourteenth Amendment due process claim – and neither Peak nor HBH cite any contrary binding authority.

13

### 2. <u>Utah Construction</u> Factors

With respect to the res judicata effect of the administrative proceeding, the Court finds the zoning ordinance proceedings meet the requirements of <u>Utah Construction</u>. First, the adjudicatory hearing by the Board, in which a legal standard was applied to specific facts, and evidence and testimony were entertained, clearly qualifies as a judicial proceeding. <u>See</u> <u>Smith v. City of Napa</u>, 120 Cal. App. 4th 194, 199 (2004) (citing <u>Knickerbocker v. City of Stockton</u>, 199 Cal. App. 3d 235, 244 (1988)) (concluding that actual determinations of the City Council are subject to preclusion). Second, Peak and HBH point to no determinations made in the proceedings that were outside the scope of the zoning clearance determination, which was properly before the Board. Finally, Peak and HBH have presented no basis for claiming that Peak did not have an adequate opportunity to litigate. Peak and HBH do not dispute that Peak was permitted to submit evidence and present testimony at each stage of the zoning clearance proceedings. Nor do Peak or HBH dispute that Peak was represented by counsel who was entitled to and did present testimony in front of the Board on behalf of Peak. Rather HBH claims that the proceedings were not adjudicatory in nature because (1) the "hearing was conducted by the Defendant in this case"; (2) the hearing was presided over by an elected legislative official who was opposed to Peak and HBH's operations; (3) there was no process to disqualify a member of the Board for a conflict of interest; (4) a jury trial was not available; (5) witnesses were not compelled to testify and were not required to testify under oath; (5) Peak and HBH did not have an opportunity to cross-examine the County's witnesses under oath; (6) there was no discovery taken and no sworn testimony presented. HBH Opp'n at 16-20. The Court is not persuaded.

First, Peak and HBH cite no authority for the proposition that <u>Utah Construction</u> requires an administrative proceeding to offer the same rights afforded in a non-administrative proceeding. <u>Utah Construction</u> requires only that the parties have an opportunity to litigate and that the administrative agency act in a judicial capacity. Second, Peak and HBH do not assert that Peak attempted to call

14

witnesses or were otherwise precluded from calling witnesses. Similarly, Peak and HBH do not argue that Peak sought to cross-examine the County's witnesses or were otherwise precluded from cross-examining any of the County witnesses. Third, Peak never raised an impartiality argument before the Board. Even if an impartiality argument had been raised, California courts have rejected similar arguments that elected county officials standing in a quasi-judicial role "could never be impartial as a decision maker" when they adjudicate disputes impacting their own interest. See, e.g., Basurto v. Imperial Irrigation Dist., 211 Cal. App. 4th 866, 871 (2012); Attard v. Bd. of Supervisors of Contra Costa Cnty., 14 Cal. App. 5th 1066, 1083 (2017) (impartiality "standard does not demand the same degree of impartiality required of a judicial officer."). Indeed, California courts have held that "[t]he law does not support such a categorical invalidation of adjudication by an administrative agency." Basurto, 211 Cal. App. 4th at 871.

Based on the application of California's preclusion law, preclusion bars Peak and HBH's § 1983 claims to the extent they are predicated on the nullification of the 2012 Zoning Clearance. The Planning Commission's decision to nullify the 2012 Zoning Clearance became final on March 10, 2020, when the Board upheld the Planning Commission's decision. See Compl. ¶ 60; see also RJN, Exs. 4, 6. Peak and HBH were either parties to the prior zoning clearance proceedings or were in privity. In determining whether the issues Peak and HBH seek to litigate are "identical" to issues decided in prior proceedings, California courts apply the "primary rights" doctrine. Under that doctrine, "the invasion of one primary right gives rise to a single cause of action." Slater v. Blackwood, 15 Cal. 3d 791, 795 (1975). "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." Id. In Peak's appeal before the Board, it asserted six grounds for why the Board should not uphold the Planning Commission's nullification of the 2012 Zoning Clearance. Boiled down, Peak argued that (1) it was not required to get a permit for certain activities; (2) it received prior approval for its activities and any deviations were "commonplace"; (3)

15

there were factual inaccuracies in the Notice of Violation issued by the Planning Commission; and (4) it obtained all of the permits it was required to for the development. See RJN, Ex. 6 at 169-172. In short, Peak argued that it did not violate the 2012 Zoning Clearance and therefore the Planning Commission improperly nullified the 2012 Zoning Clearance. The arguments and interests Peak asserts here are the same arguments and interests it made during the zoning clearance proceedings that were ultimately rejected when the Board upheld the Planning Commission's decision to nullify the 2012 Zoning Clearance.

## IV. CONCLUSION

For the foregoing reasons, the County's motion for judgment on the pleadings is GRANTED. Should Peak and HBH choose to file amended complaints, they must be filed and served no later than June 22, 2022. Failure to file by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add defendants or claims must be sought by a separate, properly noticed motion.

IT IS SO ORDERED.

Date: May 27, 2022

                                       Dale S. Fischer
                                       United States District Judge